In re RANDALL.

(Supreme Court, Appellate Division, First Department.   November 22, 1907.)

1. ATTORNEY AND CLIENT—MISCONDUCT—DISBARMENT.
   Under Code Civ. Proc. § 67, providing that an attorney may be disbarred for deceit, malpractice, etc., an attorney who informed his client that she was entitled to contest a will as next of kin and heir at law, when he knew she had no such right, and who verified and filed objections to the probate of the will contrary to the directions of his client, is guilty of such misconduct as justifies suspension.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 55, 56.]

2. SAME—SUSPENSION—PUNISHMENT.
   Where an attorney had been previously suspended for one year for professional misconduct, a suspension for two years for a second offense was imposed.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attorney and Client, §§ 76–78.]

Application to the Appellate Division to discipline Samuel H. Randall, an attorney at law, for misconduct toward his client. On motion to confirm report of referee finding respondent guilty of misconduct warranting suspension. Report confirmed, and respondent sentenced to suspension from practice for two years.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

Egerton L. Winthrop, Jr., for petitioners.
Samuel H. Randall, in pro. per.

PER CURIAM.   Section 67 of the Code of Civil Procedure provides that:

"An attorney and counsellor who is guilty of any deceit, malpractice, crime or misdemeanor * * * may be suspended from practice, or removed from office, by the Appellate Division of the Supreme Court."

The respondent has been found guilty by the referee of professional misconduct in verifying and filing objections in the Surrogate's Court of Kings county to the probate of a will.

One Cecelia A. Woolsey died in the county of Kings on December 19, 1905, leaving a last will and testament which was offered for probate before the surrogate of Kings county. None of the parents or relatives of the deceased were known. It seems that, when she was a few weeks old, one Elizabeth Woolsey met upon Broadway, New York, a woman who was soliciting charity with the deceased, a child a few weeks old in her arms; that this woman gave the child to Elizabeth Woolsey, who thereupon assumed her custody and cared for her until she was sent to a convent to be educated; that, after her education was completed, she became an actress, and continued in that profession until shortly before her death; that by her will she made provision for Elizabeth Woolsey, whom she called her foster mother, leaving the balance of her estate to the proponent. In the petition for the probate of the will it is stated that Elizabeth Woolsey was a devisee and legatee, and a citation was issued to her. Section 2617 of

the Code of Civil Procedure provides that any person, although not cited, who is named as a devisee or legatee in the will propounded, or who is otherwise interested in sustaining or defeating the will, may appear and at his election support or oppose the application; that in case the will propounded for probate is opposed due and timely notice of the hearing of the objections to the will shall be given in such manner as the surrogate shall direct to all persons in being who would take any interest in any property under the provisions of the will. On December 22, 1905, after the death of the testatrix, the respondent went to the residence of Elizabeth Woolsey in Brooklyn and had an interview with her at her request. His testimony as to that interview is that Mrs. Woolsey stated that she had had difficulties and quarrels with one Harriet E. Gates, and was apprehensive that she would get a substantial part of the deceased's estate; that she had adopted the deceased more than 40 years before; that papers had been drawn to show their relations, and each one was to inherit the property of the other; that, if there was any possible way, she wanted to have the property secured to herself; that the respondent said that he thought, from her relations with the deceased and from the knowledge he had of the law, she was entitled to make a claim as heir at law and next of kin; that that was his belief and that it was his belief that she should have a status in court; that she could go before the court and might be enabled to show that the will was not a just will, and not a will that should be admitted to probate, and, if it was not admitted to probate and there had been an agreement for mutual wills, the other that her daughter made for her might be admitted so that she could secure the benefit of it in that way; that the substance of the interview was that "she said she would pay me a retainer not exceeding $500 in cash if I would take her case on a contingency for 50 per cent., one-half of what she should receive in any way either upon any contest or upon any adjustment or settlement upon any will that her daughter had made. I was to render my services without any compensation unless I was successful or a settlement was made by her"—and that she would make no settlement without advising with the respondent or without his consent; that the next interview he had with her was on January 1, 1906, and that in the meantime he had received a letter from Mrs. Woolsey as follows:

"Mr. Samuel H. Randall.
  "Sir:—Your service is no longer requested by me.
        "Yours respectfully,                    Elizabeth Woolsey."

At that interview the respondent told Mrs. Woolsey that he had learned that she had seen the will and that she would not need his services any longer, and was not going to make any contest, to which she replied that she would not make it on the ground that her health would not permit it. To this the respondent said:

"You have acted pretty rugged in all of those matters before with Miss Gates, and you seem to have been in pretty good health in dealing with me. If you are not in good health and do not desire to continue, I shall not urge it; but I shall expect you to do what is right in reference to the agreement what we have made. I have gone on and done my work as far as possible to take care of your interests, and I shall expect you to do what is right with me."

"Well," she said, "I am going to pay you your retainer anyway. I think you are entitled to it. If I desire to change my mind, I will hold you to the agreement that you promised to take the case on a contingency, but you were to charge me nothing more than this cash retainer that I am to pay you," to which the respondent replied, "That is so," and she then told the respondent to call on the 2d of January, when she would give him the balance of the retainer—$225— on the next day. On the next day (January 2d) the respondent again called on Mrs. Woolsey and she paid him the $225, and during that interview she repeated the statement that she had not fully made up her mind to go on with the contest, but that she might. The respondent gave to Mrs. Woolsey a receipt for the $225, as "the balance of my retainer in the matter of her interest in the estate of her adopted daughter, Cecelia A. Woolsey." Nothing at this interview was said of any contingent fee or other agreement in relation to the matter. The respondent then told Mrs. Woolsey that if her health did not permit going on with the proceeding, or for any reason she did not care to do so, she could do as she preferred. The respondent left her his address, and said that she could call on him whenever she liked. He further testified that on the 5th day of January Mrs. Woolsey called at his address, 70 West Eighty-Eighth street, and at that interview she said, "I have decided, or about decided, to have the contest go on," and showed the respondent a letter from the proponent. The respondent drafted a reply to this letter, and asked Mrs. Woolsey, "Do you want me to prepare the papers so as to raise a contest in regard to the will offered for probate?" and she said, "Yes; she wanted me to have them ready." He told her that he would. Mrs. Woolsey then told the respondent that she would give him what she had promised, the 50 per cent., that she desired him, if he did not hear from her again, to have the papers all ready to go on with the contest, and he replied, "I will be all ready," and as she left she said, "Now, be sure, if you don't hear from me again, to have the papers all ready; if I don't change my mind again, and I don't think I shall change my mind again;" that this was the last interview that the respondent had with his client. He did not hear from Mrs. Woolsey again until the return of the citation which was on February 27th.

Adopting the respondent's own statement of the situation that then existed, he had been paid the $250 as a retainer. He had an agreement for 50 per cent. of anything that his client should receive from the estate as the result of a contest or settlement. He had been told that she had no further use for his services, and had no wish to make a contest, both in writing and verbally, and that he had assured her that whatever she wished to do about the matter he would obey her directions. She then told him that she wanted him to prepare the papers for a contest. There was certainly nothing that expressly revoked the notice that she gave him that she did not intend to make a contest, or authorize him to make a contest on her behalf without further instructions. Giving the most liberal interpretation to this interview, and accepting the respondent's own statement of it, it is clear that he was not authorized to commence a contest without fur-

ther instructions from his client, or to subject her to the expense and trouble of a contest against her wishes. It is entirely clear that she has no claim to the estate of the deceased as next of kin or heir at law. If she had any right, based upon an alleged contract for mutual wills, that right could only be enforced by a proceeding in the Supreme Court, and could not in any way be affected by the probate of the will which was then offered. He must have known that, as she was not the next of kin or heir at law of the deceased, any contest could only result in the imposition of costs upon his client, without the slightest possible advantage to her; and there was nothing to justify him in commencing such a contest without explicit instructions from his client to that effect. On the return of the citation for the probate of the will, on February 27, 1906, he appeared before the surrogate, stated that he appeared for Elizabeth Woolsey, and desired to make a contest on her behalf, and had prepared papers, and, as soon as they were verified, he would file them, that he had not had an opportunity to have them verified. The case was thereupon placed upon the contest calendar and adjourned for a week. He testified that he looked for his client in court, and, not finding her, he then verified the objections as her attorney. These objections upon information and belief denied that the will propounded was the last will and testament of the decedent, that the same was executed according to statute, or that the decedent was of sound mind or memory, or mentally able of making a will, and alleged that the said instrument was procured by undue influence. From his own statement, he had no information upon any of these points which justified an attorney in swearing to their truth upon information and belief, unless a statement made by his client as to an interview with the decedent, which might possibly be claimed to justify an allegation that the will had been procured by undue influence. Shortly after he had verified this so-called answer, but before he had filed it, and while he was in the clerk's office, Mrs. Woolsey came in. He said to her, "Madam, I would like to see you and confer with you," to which she replied, "I don't want to confer with you," and then went into another office. After this rebuff, which certainly was sufficient to inform the respondent that she did not wish him to do anything further in the matter, the respondent filed this so-called answer which he had verified and which his client had not verified, and thus forced a contest against the wishes of his client. The respondent then left the room without any further attempt to have any further communication with his client. The proceeding had been adjourned to March 6th, and on that day the parties and the respondent attended before the surrogate.

The official record of what happened before the surrogate was introduced in evidence. The respondent asked the surrogate for an adjournment to allow him to see his client. The surrogate asked the respondent whether or not his client was anxious to contest the will. He replied:

"I don't say that. I say she gave me no instructions different from the instructions to oppose it. Since the last time the case was called she has changed her mind."

When the respondent was asked whether his client had verified the objections, he replied that he had verified them, and that his client knew that they were verified; that he had asked her to, but that she did not do it; that she would not talk with him at all; that she seemed not to want to make the contest, and he subsequently said that he never asked her to verify the objections, as she would not talk with him; that he got the impression from her that she did not want to make a contest; and that after this declaration he filed the objections verified by himself. It seems to us utterly clear that the respondent, upon his own statement, was not authorized to institute any contest in relation to this will, and that his verifying the answer to the petition for probate and filing it against what he knew was his client's wishes and against her instructions was deceit and misconduct which justified the finding of the referee. From the beginning the respondent advised his client that she was interested in the estate as an heir at law or next of kin, a proposition which was absurd upon its face.

The distribution of personal property is regulated by section 2732 of the Code of Civil Procedure, and under it Elizabeth Woolsey could have no possible interest in the estate of the deceased, nor would she be an heir at law. Notwithstanding the evident disinclination of Elizabeth Woolsey to enter into any contest, he urged her to do so by advice which was clearly incorrect and against her interest. The statement to the surrogate, the official record of which was produced, shows clearly that he then knew that his client had changed her mind, and had determined not to make a contest. It was not a case of an inexperienced young man who might have doubts as to his duty in the premises, but an attorney at law who had been a member of the bar for upwards of 40 years, and who deliberately and knowingly interposed an answer to an application for the probate of a will on behalf of one who had no interest in the estate of the testatrix, except under the will the probate of which he endeavored to prevent. The claim on behalf of the respondent that his contract with his client gave him any right to contest for her as her attorney the probate of the will is without the slightest foundation; nor did he assume to contest the will under any such right, but he claimed to interpose the objections as attorney for his client, and on her behalf, when she had notified him that she did not wish to make a contest and immediately before had refused to have any consultation or interview with him. These facts, we think, fully justified the conclusion of the referee that the respondent was guilty of professional misconduct which calls for his being disciplined by the court.

The question is then presented as to the punishment that should be inflicted because of this misconduct. When this respondent was before this court on a former charge of misconduct, he was suspended for one year. We have now again to consider the charge of professional misconduct which has been sustained after a hearing before a very careful referee who, with great patience, listened to all these explanations and statements of the respondent. His conclusion we

affirm, and have come to the conclusion that the lightest punishment that we would be justified in inflicting under these circumstances is a suspension from practice for two years.