In the Matter of the Appraisal of the Estate of WILLIAM P. PIERCE, Deceased, under the Acts Relating to Taxable Transfers of Property.

BYRON A. PIERCE and ERNEST W. PIERCE, as Administrators, etc., of WILLIAM P. PIERCE, Deceased, Appellants, v. THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Fourth Department, May 5, 1909.

**Tax — transfer tax on savings bank deposit in trust — facts showing completion of gift during lifetime of depositor.**

Where one who has deposited his own money in a savings bank in trust for another dies without revoking the tentative trust so created and the title of the beneficiary becomes absolute, the deposit is subject to a transfer tax under section 220 of the Tax Law. Not so, however, if during his lifetime the depositor completes the gift by some unequivocal act or declaration.

Where a father deposited his own money in a savings bank in trust for his children, placed the pass books in a safe deposit box to which the children had access, stated that the deposits would belong to them when they arrived at their majority and at that time declared that the moneys became theirs but had better be left as deposited instead of transferred so as to stand in their names individually, and there is no evidence that he ever revoked the gift during his lifetime or used any of the funds so deposited, the gifts became irrevocable before the depositor's death and are not subject to a transfer tax.

The same is true of a deposit made by the depositor in trust for his wife, where he declared that the money belonged to her at the time of the deposit and there was no subsequent revocation or use of the money by the depositor.

SPRING, J., and McLENNAN, P. J., dissented, with opinion.

APPEAL by Byron A. Pierce and another, as administrators, etc., from a decree of the Surrogate's Court of the county of Cattaraugus, entered in said Surrogate's Court on the 4th day of November, 1908, affirming a decree taxing under the Transfer Tax Law certain savings bank trust funds.

William P. Pierce, a resident of the city of Olean, in Cattaraugus county, died intestate on the 14th day of April, 1908, leaving him surviving his wife and three children, all of full age. He made deposits of moneys in various savings banks in the State of Massachusetts. The deposits were in form as trustee for his wife and

children, each account being in the name of William P. Pierce, as
trustee for a particular person named. The accounts aggregated, at
the time of his death, the sum of $21,722.03. They were opened
by him long before his death, and the deposits were made from
time to time, covering a period of many years. When a given
account reached the interest-bearing limit in the bank, a similar
account would be started in another bank, so that at his death there
were fifteen accounts in all.

The surrogate (60 Misc. Rep. 25) held that the funds were taxable
under the Transfer Tax Law, and the administrators appeal.

*P. M. French,* for the appellants.

*George M. Lundy,* for the respondent.

KRUSE, J.:

We agree with the learned surrogate that if these savings bank
deposits were mere tentative trusts, revocable by the deceased, the
depositor, during his lifetime, they are taxable under the Transfer
Tax Law, although the trust became absolute and irrevocable upon
the death of the depositor. The Transfer Tax Law imposes a tax
upon the transfer of property when made in contemplation of the
death of the transferor, or intended to take effect in possession or
enjoyment at or after his death. (Tax Law [Laws of 1896, chap.
908] § 220, as amd. by Laws of 1905, chap. 368.)

It is contended on behalf of the appellants, however, that the
trust became irrevocable and effective before the death of the
deceased. The rule by which this question must be determined is
stated in *Matter of Totten* (179 N. Y. 112, 125) as follows: "A
deposit by one person of his own money in his own name as trustee
for another, standing alone, does not establish an irrevocable trust
during the lifetime of the depositor. It is a tentative trust merely,
revocable at will, until the depositor dies or completes the gift in
his lifetime by some unequivocal act or declaration, such as delivery
of the pass book or notice to the beneficiary. In case the depositor
dies before the beneficiary without revocation, or some decisive act
or declaration of disaffirmance, the presumption arises that an abso-
lute trust was created as to the balance on hand at the death of the
depositor."

To determine whether the deceased completed the gifts in his lifetime it will be necessary to examine a little further the facts and in so doing it should be kept in mind that the unequivocal act or declaration required to complete the gift is such as delivery of the pass book or notice to the beneficiary.

The facts do not seem to be in dispute. It appears that besides the widow the deceased left a daughter thirty-one years of age at the time of his death, and two sons, aged twenty-eight and twenty-four years respectively, at that time. The deceased had a safe deposit box in which were kept the pass books and other securities belonging to him and the members of his family. The deceased and his sons had keys to the deposit box, but all the members of the family seem to have had access thereto as occasion required.

While the sons occasionally had the bank books I think no such delivery of the pass books was shown, as of itself, unaided by other acts and declarations of the deceased would make the trust absolute and irrevocable. It appears, however, that the wife and children were kept informed of the deposits, and the deceased declared to them his purpose in opening the accounts and making the deposits. He often stated to the children that the funds set apart for them would belong to them at the age of twenty-one years, and told his wife that her funds were hers at the time the trust was made.

The form of the accounts was not changed and the moneys were all left in the banks. The deceased used none of the funds himself, nor did he pay any of the moneys over to his wife and children, and no request was ever made by them that he do so except that shortly before his death the daughter requested that the accounts which had been made in trust for her be transferred to her name. That occurred about the time she was married. Up to that time the deceased and his wife and children had lived together as one family.

Stress is laid upon this request, and the fact that the account was not transferred as showing that the trust was then of a tentative nature. It seems to me, however, that the conversation as a whole between the father and the daughter does not bear out that claim. She said to her father: " Father, why could not these accounts made in trust for me in Boston be made over to my name so that I may have them in Rochester near my home?" The father answered

that these accounts were already hers and had been since she was twenty-one years of age, and that she had better leave them in Boston so that he could take care of them when he took care of his own accounts. All of the children were then over twenty-one years of age, and his statement to her that these accounts were already hers is quite in accord with his previous declarations that the moneys so deposited by him for the children should belong to them at the age of twenty-one years. There is no evidence to show that the deceased ever retracted the declaration which he made before the children became of age, that the money should belong to them when they became of age.

The mere fact that these accounts were not changed in form, and the moneys paid over to the children at the age of twenty-one years, is not, as it seems to me, a controlling circumstance to show that the trust was merely tentative. It was quite natural that so long as the children remained at home and were members of the family they should be entirely content to leave the funds in the form in which they had been deposited; and the same may be said as regards the moneys deposited for his wife.

The case of *Tierney* v. *Fitzpatrick* (122 App. Div. 623), relied on by counsel for respondent, is distinguishable from this case by the fact that there the proposed gift, consisting of moneys in a savings bank, was not to become effective until after the death of the donor. Here, as has been seen, the trust became absolute and irrevocable during the lifetime of the donor.

The order appealed from should be reversed, with costs, and the order and decree of the surrogate fixing the amount of the taxable estate be modified by deducting therefrom said trust funds and reducing the tax accordingly.

All concurred, except McLennan, P. J., and Spring, J., who dissented in an opinion by Spring, J.

Spring, J. (dissenting):

Mr. Pierce, the decedent, when he made each deposit in the savings bank to his credit as trustee for the child named in the certificate doubtless intended that at some time the money would belong to the person designated. He did not, however, irrevocably part with his title to the money, and his conduct with reference to the

deposit indicates that he proposed to retain not alone the control and
dominion over each of these deposits, but the right at any time to
revoke the apparent trusteeship and use the money as he desired.
He was anxious to aid his children, yet, with his thrift and caution,
he retained the real ownership of the property in order that he
might be prepared for any stress of circumstances calling for its
use.    The trust, if any, was tentative only.

He kept the possession of the certificates.    To be sure they were
in the deposit box to which his sons had access.    The box was a
general depository for the valuables of the family apparently, and
there is no pretense that any of the children exercised any dominion
over these certificates.    One of them occasionally adjusted the inter-
est, but even this clerical work was performed at the explicit direction
of the father.

It is claimed that these deposits were intended to become effective
as each child arrived at maturity.    Whatever may have been his
intention, there was no delivery over of any certificate of deposit
as each child reached the alleged culminating period.    The father
kept close supervision and dominion over the same as before,
although the youngest of his children was twenty-four years of age
when the old gentleman died.    One of the sons testified to declara-
tions of his father that these deposits would belong to the children
as each became twenty-one years of age.    Again, when the daughter
several years after her majority and upon her marriage, asked her
father for the money deposited for her benefit, he said it was hers
but he would retain it.    The significant fact is he kept the money
until his death.    He had accumulated this property and evidently
proposed to keep it until his death, and I am convinced that he did
not expect these gifts, if such they were, would become effective in
any event until he died.

The witness testifying to the declarations of his father was inter-
ested, in that while he was confined to statements of his father per-
taining to the other two children, the deposits were alike in form
and treated alike, so the evidence must inevitably inure to the bene-
fit of the witness.    Testimony of this character against the decedent
must be scrutinized carefully.    In the present case it is not sup-
ported by the acts of the father with regard to these deposits and,
after all, they are the best exponent of his intention.    It is also to

be noted that neither the widow of the intestate, the elder son nor the daughter gave any testimony of like declarations made by the father.

There were no specific findings by the surrogate, but his decree directing the imposition of the tax and the order confirming the same upon appeal in effect settle the questions of fact adversely to the appellants.

The decree and order of the surrogate should be affirmed, with costs.

McLENNAN, P. J., concurred.

Order reversed, with costs and disbursements, and the order and decree of the surrogate modified by deducting from the amount of the taxable estate the trust funds in question and reducing the tax accordingly.