1. TAXATION ☞879—TRANSFER TAX—PROPERTY SUBJECT—BANK DEPOSIT.

Where a savings bank deposit of $3,000, made in 1908, in the name of R., the decedent, and a niece, was expressly stated to be a joint account, with right of survivorship, payable to either or the survivor, the transaction was within Laws 1914, c. 369, § 249, subd. 3, providing what deposits shall become the property of persons as joint tenants, and the ownership of the whole deposit did not vest in the niece until she became the survivor at the death of decedent; and hence the deposit was subject to a transfer tax under Tax Law (Consol. Laws, c. 60) § 220, imposing such tax on a transfer made of property to take effect at or after the grantor's death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. ☞879.]

2. GIFTS ☞30—TAXATION ☞879—TRANSFER TAX—PROPERTY SUBJECT—BANK DEPOSIT—TENANCY IN COMMON.

Where decedent, shortly after making a deposit of $3,000 in a savings bank "in account with R. [decedent] or C., her sister," informed the sister of the fact and showed her the passbook, there was a gift inter vivos of one-half of the deposit, thus creating a tenancy in common, and one-half of the deposit was subject to a transfer tax.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 52–57, 65; Dec. Dig. ☞30; Taxation, Cent. Dig. § 1702; Dec. Dig. ☞879.]

3. GIFTS ☞30—TAXATION ☞879—TRANSFER TAX—PROPERTY SUBJECT—SAVINGS BANK DEPOSIT—TRUSTS.

The making of a savings bank deposit by decedent "in trust for her nephew," naming him, became an irrevocable trust, where notice of the trust form of the deposit was given to the beneficiary, and the transaction amounted to a gift inter vivos; and hence the deposit was not subject to a transfer tax.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 52–57, 65; Dec. Dig. ☞30; Taxation, Cent. Dig. § 1702; Dec. Dig. ☞879.]

4. TAXATION ☞879—TRANSFER TAX—PROPERTY SUBJECT—GIFT INTER VIVOS—SAVINGS BANK DEPOSIT.

Where decedent, soon after making a deposit of $3,000 in a savings bank in the name of "R. in trust for C.," showed the bank book to C., who was an infant, and to his father, and told them that she intended it to be for the infant's benefit, and "that it was and was to be his and to belong to him," there was a present transfer by way of gift inter vivos, which was not subject to a transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. ☞879.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the estate of Jane H. Reed, deceased. Proceeding to determine transfer tax questions in relation to certain savings bank deposits. Decreed according to opinion.

Burton D. Esmond, of Ballston Spa, for comptroller.
George B. Lawrence, of Stillwater, for executors and beneficiaries.

OSTRANDER, S. [1] This is a proceeding to determine transfer tax questions in relation to certain savings bank deposits. Deceased died at the town of Malta, September 29, 1914. On July 6, 1908, she deposited in the Albany Savings Bank $3,000; the deposit standing:

"Albany Savings Bank in Account with Mrs. Jane H. Reed and Jennie C. Gray, Her Niece. Joint account with right of survivorship, payable to either creditor or to survivor."

January 10, 1910, she deposited $3,000 in the National Savings Bank of Albany, the account being entered in the name of said bank "In Account with Mrs. J. H. Reed or Mrs. Sarah M. Clute, Her Sister." On October 6, 1910, she deposited $3,000 in the Albany County Savings Bank "in Trust for Her Nephew Fred S. Clute." On July 8, 1911, she deposited $3,000 in the Albany County Savings Institution in the name of "Mary J. Reed in Trust for Dow S. Clute." Jane H. Reed and Mary J. Reed are conceded to be the same person.

Section 220 of the Tax Law, in relation to transfer tax, provides that a tax be imposed upon the transfer of property "by deed, grant, bargain, sale or gift made in contemplation of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." The last of these deposits was made over three years before Mrs. Reed's death, and no facts are shown warranting the inference that any of them were made in contemplation of her death, within the meaning of those words as defined by the courts.

The next inquiry is whether the transfers to the various beneficiaries, under the circumstances, were intended to take effect in possession or enjoyment at or after her death. The various deposits will be considered separately.

It appears from the affidavits filed that, shortly after the deposit of July 8th, decedent informed Mrs. Gray that she had made the same, the amount of it, and the manner in which she had deposited the money, and showed the passbook to Mrs. Gray. This deposit, it will be noted, was defined in the passbook as a "joint account with right of survivorship, payable to either creditor or survivor." This brings it within the provisions of chapter 369, Laws of 1914, section 249, subdivision 3, which declares that such a deposit "shall become the property of such persons as joint tenants." The provision has been in force since 1907, prior to this deposit.

In Bonnette v. Molloy, 153 App. Div. 73, 138 N. Y. Supp. 67, it was said that, if the moneys deposited in form similar to Mrs. Gray had been so deposited after this enactment, there could be no question but that the survivor would be entitled to the fund. Prior to this enactment there had been frequent difficulty in ascertaining the intentions of the parties in such case in respect to joint tenancy, and there had

been great reluctance to find that the depositor intended to create such joint tenancy of the fund with a right of survivorship except upon very clear and cogent evidence. But the latter part of said section 249, as amended in 1914, provides that the deposit in such form shall be conclusive evidence of the intention of both parties to vest the title to such deposit and all additions in the survivor.

In this case we have not only the statutory declaration, but very clear expression of the intent of all the parties to the contract. In most of the recorded cases the controversy has been with reference to the ownership of the fund after the death had occurred, while adjudication as to when the complete ownership finally vested for purposes of the Transfer Tax Law has not been common. It will be further noted that these joint tenancies in personal property, which it is conceded may exist, are not of the same quality as estates by the entirety in lands, which can exist only between husband and wife, who are in such case considered in law as one and the same person.

In Matter of Pitou, 79 Misc. Rep. 385, 140 N. Y. Supp. 919, Surrogate Ketcham held that even in case of joint tenancy the survivor became the owner of his associate's part because his associate died, and when he died, and that the transfer of such part was "intended to take effect in possession or enjoyment" upon the death of such tenant and was taxable. Judge Kent, in his Commentaries (volume 4, p. 360) says the whole estate or interest held in joint tenancy, whether it was an estate in fee, or for life, or for years, or was a personal chattel, passed to the last survivor and vested in him absolutely. It passed to him free and exempt from all charges made by the deceased cotenant.

The consequence of this doctrine is that a joint tenant cannot devise his interest in the land; for the devise does not take effect until after the death of the devisor, and the claim of the surviving tenant *arises in the same instant* as that of the devisee, and is preferred. It will be noted that the addition to section 249 of the Banking Law above noted provides that in such case it is to be conclusively inferred that both parties intended to vest the title in the *survivor*. Until the death of one there can be no survivor, and consequently no complete vesting of title or "taking effect in possession or enjoyment."

The moneys were originally Mrs. Reed's. What she gave to Mrs. Gray was not an immediate and absolute right to all the money, but a right to the whole of it in case she became the survivor, and subject to a right in each to draw the whole deposit during their joint lives. The full and complete ownership of the whole was not intended to vest in Mrs. Gray until she became the survivor at the death of Mrs. Reed. This deposit is therefore taxable.

[2] As to the deposit for Mrs. Clute: It appears that shortly after the deposit in January, 1910, the deceased informed Mrs. Clute that she had deposited said moneys in the form set forth, and showed her sister, Mrs. Clute, the passbook containing said account. This deposit, made to Mrs. Reed *or* Mrs. Clute, is of the same effect as if made to Mrs. Reed *and* her sister. Clary v. Fitzgerald, 155 App. Div. 659, 140 N. Y. Supp. 536. In this case of Mrs. Clute, there is no word in rela-

tion to a trust or survivorship in the form of this deposit, nor is it in form to be deemed a joint tenancy under section 249 of the Banking Law above quoted, since it is not in terms to be paid to the survivor. The fact that Mrs. Reed showed the book to her sister in this form does not show any intention with regard to it other than its form would indicate.

In Corcoran v. Hotaling, 164 App. Div. 75, 148 N. Y. Supp. 302, it was held that a deposit in this form was not inconsistent with an intention to create a joint tenancy in the fund where there was sufficient proof of;such intention, but in this case at bar no such intention appears outside of the words on the bank book. These words import a gift inter vivos of one-half of the fund, thus creating a tenancy in common. This leads to the conclusion that one-half of this fund is taxable.

[3] The deposit made in trust for Fred S. Clute by the deceased seems to fall within the rule of Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900, Matter of Pierce, 132 App. Div. 469, 116 N. Y. Supp. 816, Stockert v. Dry Dock Savings Institution, 155 App. Div. 123, 139 N. Y. Supp 986, and Hessen v. McKinley, 155 App. Div. 496, 140 N. Y Supp. 724, where it was held that when notice of the trust form of the deposit was given to the beneficiary the trust became irrevocable. The transaction amounted to a gift inter vivos, the title passed at the time, and the deposit was not taxable.

[4] Concerning the Dow S. Clute deposit: Very soon after making the deposit Mrs. Reed showed the book to Dow, who was an infant, and to his father, and told them that she intended it to be for his benefit, and "that it was and was to be his and to belong to him." If, as she expressed her intentions, "it was his" when she showed him the passbook, his ownership was not postponed, and there seems to be every element required for a gift inter vivos. This was, then, a present transfer, and was not taxable.

The question of exemption from taxation of any of these matters by reason of relationship of the beneficiary to the deceased, or by reason of the amount passing to the beneficiary, is not considered in this opinion, but will be determined upon the adjustment of the tax.

Decreed accordingly.