[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. ⬤➾59.]

2. TAXATION ⬤➾879—TRANSFER TAX—"GIFT INTER VIVOS"—CONTEMPLATION OF DEATH.

Where, at the time of his death, decedent had deposits in savings banks accounts in the name of himself and his daughters, and had the bank books in his possession, it not appearing that they had ever been in possession of either of the daughters, and it appeared that such deposits were made up of moneys given by him to them during several years, not in contemplation of death, and later handed back to him to be deposited for them, the deposits represented valid "gifts inter vivos," which, under the express provisions of Tax Law (Consol. Laws, c. 60) § 220, subd. 4, were not subject to a transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. ⬤➾879.

For other definitions, see Words and Phrases, First and Second Series, Gift Inter Vivos.]

In the matter of the transfer tax on the estate of John Klein, deceased. From an order fixing the transfer tax, the administrator appeals. Reversed, and report remitted to appraiser.

Adolph F. Gutgsell, of New York City, for petitioner.
John Boyle, of New York City, for respondent.

SCHULZ, S. This is an appeal by the administratrix of the goods, chattels, and credits of the decedent from an order entered upon the report of a transfer tax appraiser. The grounds of error urged are six in number.

Subsequently to the service of the notice of appeal a stipulation was entered into, to the effect that the said order be vacated and that the report of the appraiser be remitted to him for amendment. The proposed amendments are that the fair market value of the property No. 2167 Bathgate avenue, borough of the Bronx, city of New York, at the date of decedent's death, be fixed at $9,750, and that the transfer of two items, one of $150 and one of $50, in the stipulation mentioned, be reported, as not taxable in this proceeding. The stipulation also provided for the withdrawal of the appeal in so far as the same was taken from the finding of value by the appraiser of said real estate and the inclusion of the items heretofore mentioned among the taxable property of the decedent, thus limiting the matter before me to three alleged errors of the appraiser.

At the time of the death of the decedent he had on deposit in a savings bank in the city of New York the sum of $1,899.80 in the name of John Klein (the decedent) for daughter, Maria A. In a second

savings bank he had a deposit in the sum of $162.62 in the name of John Klein (the decedent) for daughter Mary A., and in this second savings bank he had a second deposit in the sum of $162.62 in the name of John Klein (the decedent) for daughter, Elizabeth M. The above statement of the forms of said accounts is taken from the schedules, the bank books not being in evidence. From some of the testimony it would appear that the title of the accounts contained the words "in trust."

The decedent left him surviving his wife, Maria Klein, and two daughters, Maria A. Iffland and Elizabeth M. Iffland. Counsel for the state comptroller argues that the form of the deposit creates a revocable tentative trust during the lifetime of the decedent; that he could have withdrawn the funds deposited at any time for his own use, and that the transfer took place at the death of the decedent; and hence the items in question must be included among his taxable property. The evidence indicates that the savings bank books were not delivered to the daughters, and at the time of the death were in the possession of the decedent. There is no evidence which would justify a finding that they had ever been in the possession of either of the daughters.

[1] If there had been nothing before the appraiser but the bank books, indicating a deposit of moneys in the form stated, his contention would be directly in line with the opinion in Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900, where the rule as to deposits of this character was clearly and decisively stated as follows:

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor"—cited with approval in many cases, among which are Matter of United States Trust Co., 117 App. Div. 178, 102 N. Y. Supp. 271, affirmed 189 N. Y. 500, 81 N. E. 1177; Stockert v. Dry Dock Savings Institution, 155 App. Div. 123, 139 N. Y. Supp. 986; Matter of Davis, 119 App. Div. 35, 103 N. Y. Supp. 946; Warburton Ave. Baptist Church v. Clark, 158 App. Div. 230, 142 N. Y. Supp. 1089.

[2] The contention of the appellant, however, is that the money which was the subject of the deposits was not the property of the decedent when he deposited it, but was then the property of his two daughters, because, prior to the date of deposit, the decedent had by valid and completed gifts presented the daughters with the same. The testimony is that the two daughters of the decedent had small banks at home, and that the testator used to put various amounts in these banks, and that at Christmas times and upon their birthdays he would give them money or deposit it in these banks; that the banks belonged to the daughters, respectively, and that thereafter, from time to time, as the amounts in the small banks grew larger, the daughters would hand their father the money to be deposited for them; and

that the item of $162.62 deposited in the one savings bank for his daughter Maria A., and a similar deposit in the same bank for his daughter Elizabeth M., were moneys which the decedent had actually given to his daughters in the manner indicated and which they had handed to him to deposit for them.

The testimony of one of the daughters is that she gave back the money to her father to deposit for her, and that some of this money she received from her father for work done for him. She also states that the sum of $1,899.80 was made up in the same way of presents given to her by her father over a period of years, which she thereafter, from time to time, gave to her father to deposit for her; that he had first started the small account for her, and later on started the larger account; and that none of the funds deposited in any of the three accounts were deposited by her father in the first instance, but in each case the sums deposited were made up of amounts that had been actually given to her by her father, and which had been given to her sister by her father, and then returned to the father by her and her sister, to take care of for them until they were married, respectively. It also appears that the one daughter, upon being married, received a larger account theretofore held in trust for her by her father. The daughter Maria A. had been married in June, 1914, and at the time of the death of the decedent the moneys had not as yet been transferred or paid to her, nor had the smaller of the two accounts been paid to her sister. This circumstance, however, is not controlling, as showing the existence and revocability of the trust. Matter of Pierce, 132 App. Div. 465, 116 N. Y. Supp. 816.

I think it is evident that, if the testimony of the witnesses is true as to the facts detailed, then there was a valid gift inter vivos (Lewis v. Jones, 50 Barb. 645, 651; Matter of Birdsall, 22 Misc. Rep. 180, 49 N. Y. Supp. 450; Gannon v. McGuire, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694), and the mere fact that the father, in depositing the fund which he had presented to his daughters, and which they had turned over to him to deposit for them, did so in a form which, if unexplained, would constitute a revocable and tentative trust, does not in any way deprive them of their ownership. Their title to the same does not arise, nor is there any transfer to them, by reason of the death of the decedent. The transfer from the decedent to them took place when he made the gifts to them, and nothing that he could do thereafter could deprive them of the right which they had to the moneys which were the subject of the gifts respectively. The handing back of the accumulated gifts by the donees to the donor under the conditions stated did not affect the gift. Gannon v. McGuire, supra.

There is testimony by the administratrix to the effect that the larger deposit was to be given to the daughter when she married. This may have led the transfer tax appraiser to conclude that the items in question were taxable; but I think, when all of the testimony is examined, the preponderance is clearly in favor of the contention made by the appellant. The evidence as given is not on its face improbable, the amount involved is small, and I cannot assume that the testimony as given by the mother and the daughter is absolutely false. On the con-

trary, I think the surrounding circumstances are such as to indicate that the witnesses in question were telling the truth.

If the money in question were the aggregate amounts of gifts inter vivos, which in my opinion they were, they might still be the subject of taxation, if made in contemplation of the death of the donor. Tax Law (Laws of 1909, c. 62, constituting Consol. Laws, c. 60) art. 10, § 220, subd. 4; Matter of Birdsall, supra; Matter of Palmer, 117 App. Div. 360, 102 N. Y. Supp. 236. The uncontradicted testimony, however, is that the making of the gifts in question extended over a long period of years, were not made while the donor was ill, or at or near the time of his death. I can find no testimony warranting me in finding that the contrary was the fact.

Under the circumstances, I reach the conclusion that the item of $1,899.80 on deposit in the Emigrant Industrial Savings Bank in the form as above indicated was the property of Maria A. Iffland, and the two items of $162.62 each deposited in the Bowery Savings Bank were the property of Maria A. Iffland and Elizabeth M. Iffland, respectively, and consisted of gifts made by the decedent to them during his lifetime, and thereafter handed by them to him from time to time to be deposited for them.

The order is therefore reversed as to the three items mentioned, and the report is remitted to the appraiser for compliance with the terms of the stipulation as hereinbefore set forth, and for correction as indicated.

Order reversed, and report remitted to appraiser.