ground railroads that has been adopted by the city of New York. The general welfare of the community requires that these methods of communication should be as ample as possible, and that there should be no delay in providing means of transportation, and the welfare of the whole city requires that this subway, as designed by the Rapid Transit Commission, should be approved.

In directing, therefore, that .the report of the commissioners should be confirmed, the court wishes to express its obligation to the gentlemen who have consented to serve upon this commission for the manner in which their investigation was conducted, and the ability and devotion that they have shown in the discharge of the duties which they accepted at the request of the court.. The record shows that the commissioners devoted the whole of the month of December in the performance of these duties, and that, instead of this proceeding taking months or years to complete, as has been too often the case in the past, the whole question was disposed of in a little more than a month from the time that the commissioners assumed their duty until the presentation of their report to the court. And the court also wishes to express its appreciation of the assistance which was rendered to the commissioners in thus promptly disposing of this matter by counsel who appeared for the various property owners who object to the construction of the road. The whole proceeding has, both by the commissioners and counsel, been conducted in a way to meet with our warmest approval, and we thus express our satisfaction with the methods that were adopted in the whole conduct of the proceeding.

The conclusion, therefore, is that the report of the commissioners should be approved. All concur.

─────────

### STOCKERT v. DRY DOCK SAVINGS INST. et al.

### SAME v. BOWERY SAVINGS BANK et al.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. TRUSTS (§ 59*)—SAVINGS BANKS—GIVING OF BANK BOOK—REVOCATION.

The giving of the bank book of a savings bank to the donee in connection with a deposit in the name of the donor as trustee for the donee, created an irrevocable trust, which was not revoked by the returning of the book at the request of the donor, in the absence of any evidence that the donor intended to revoke the trust and that the donee consented thereto.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*]

2. TRUSTS (§ 59*)—REVOCATION BY WILL—DEPOSITS.

Where a savings bank deposit is made in trust for another, either irrevocably or tentatively only, it cannot be revoked by will, since, even if only tentative, it becomes irrevocable by the death of the donor at the same time the will goes into effect.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. . § 59.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Separate actions by Sara E. Stockert against the Dry Dock Savings Institution and others and against the Bowery Savings Bank and others. Judgment for defendants in each case, and plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

George H. Taylor, Jr., of New York City, for appellant.
Carlisle Norwood, of New York City, for respondents.

SCOTT, J. These appeals present a question as to "savings banks trusts." The creator of the trusts was one Letitia Riley Grogan, the wife of one William Grogan, to whom she had been married about 10 years. She was, in 1909, about 80 years of age, and very illiterate and penurious. She had, by some means or other, acquired, for a woman of her class, considerable property. She had on deposit, in the Seaman's Bank for Savings, $615.50; in the Bowery Savings Bank, under her maiden name of Letitia Riley, $926.26; in the Dry Dock Savings Bank, $2,034.58; and, in the Bank for Savings, $2,747.24. She owned a house at 32 Sherman street, Queens, in which she lived, some lots in the Bronx, and money in the Long Island Savings Bank.

Plaintiff was a niece of Mrs. Grogan. She was married to a Dr. Chas. F. Stockert, and lived in Nebraska. She had visited her aunt in 1900, and again visited her in 1909, with her husband. Between 1900 and 1909 letters were exchanged from time to time between plaintiff and her aunt. It fairly appears from the letters and the evidence as to Mrs. Grogan's declarations that plaintiff was a favorite, and perhaps the favorite, relative of her aunt. Plaintiff and her husband came to New York in 1909, partly to see the Hudson-Fulton celebration, and partly in order that her husband might attend some postgraduate lectures. After they had been here some weeks, plaintiff called on her aunt, after which they met with considerable frequency. Mrs. Grogan exhibited to plaintiff and her husband her bank books, and finally gave them to Dr. Stockert, to have the interest written up, and to make inquiries as to having the accounts put in trust. These books were apparently returned to Mrs. Grogan, because on October 27, 1909, she brought them with her to New York, and, in company with plaintiff and her husband, visited three of the savings banks.

She had about $500 in the Seaman's Savings Bank. Of this she drew out about $200, and transferred $369.30 to an account entitled "Letitia Grogan, in Trust for William Grogan" (her husband). Of the amount drawn out she gave $150 to Dr. Stockert to pay to certain relatives, which he subsequently did. She then went to the Bowery Savings Bank, where she had on deposit $926.26, which she caused to be transferred to a new account, entitled "Letitia Riley, in Trust for Sara E. Stockert, Niece." She delivered this bank book to plaintiff, who took it West with her, and retained it until May 16, 1911. She then went to the Dry Dock Savings Bank, where she had $2,034.58 which she had transferred to an account entitled "Letitia Riley, in Trust for Sara E. Stockert, Niece." She delivered this book to plain-

tiff, who took it West with her, and retained it until May 16, 1911. The amounts represented by these two accounts are the subjects of these actions.

Owing, apparently, to a rule of the Bank of Savings that it would not accept an account "in trust" for a niece, Mrs. Grogan drew a draft on the bank, directing it to pay the amount on deposit there ($2,749.24) to Sara E. Stockert, who had the amount transferred to herself and her husband, "or survivor." Subsequently, in January, 1910, upon an expression of a wish by Mrs. Grogan, this book was returned to the bank, and the amount transferred to a new account in her name, and the new book sent to her. It appears that Mrs. Grogan's purpose in transferring this last account was that the money should be used, so far as necessary, to the payment of assessments on her Bronx lots, which, with her Long Island property, Mrs. Grogan conveyed to plaintiff on November 8, 1909. It appears quite plainly that at this time it was Mrs. Grogan's purpose to give practically everything she possessed to plaintiff, except the small provision she made for her husband.

On May 8, 1911, she wrote a letter requesting plaintiff to return the two books, in care of a Mrs. Munch, who lived next door. She did not state why she wanted them back. Plaintiff promptly returned the books as requested; but they never came into Mrs. Grogan's possession, being retained by Mrs. Munch. Her letter was dated May 16th. About a week before she died, Mrs. Grogan signed two notices, written by Sara A. Trainor, addressed to the Dry Dock and Bowery Savings Banks, stating that she had opened an account in the name of plaintiff's *husband*, saying, "Now I want to change it, and they refuse to return the books," and asking what to do. This latter was inaccurate in two respects. The account had not been put in the name of plaintiff's husband, and plaintiff had not refused to return the books.

On May 24, 1911, Mrs. Grogan made a will in which she specifically gave to one set of relatives the money in the Bowery Savings Bank, and to another set the money in the Dry Dock Savings Bank, explaining in a subsequent clause that she had given nothing to plaintiff, "because she and her husband have retained my bank books, which they have obtained from me for safe-keeping, and have refused to return them to me." Mrs. Grogan died on May 26, 1911, and this controversy arose.

[1] The present law as to savings bank trusts may be said to start with Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900, wherein the Court of Appeals reviewed all the former cases on the subject, and stated its intention to lay down a decisive rule as follows:

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook, or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the testator."

This rule appears to establish two propositions: (1) If the depositor, during his lifetime, completes the gift by some unequivocal act, such as delivery of the passbook or notice to the beneficiary, the trust thereupon and thereby becomes irrevocable by any act of the depositor. (2) In default of such an unequivocal act, the trust remains tentative only during the lifetime of the depositor, and revocable by him by some decisive act or declaration. If not so revoked, the gift becomes absolute on the death of the depositor.

In Tierney v. Fitzpatrick, 122 App. Div. 623, 107 N. Y. Supp. 527, the depositor, after opening an account in trust for his son, left the bank book in his son's house, but frequently took it away for a short time for the purpose of having the interest written up, etc. He drew out the money, or part of it, and the action was against his executrix. This court held that the leaving of the bank book with the son under the circumstances, which involved the retention of dominion over it, did not make the trust irrevocable under the rule in the Totten Case. The Court of Appeals reversed on a point not considered in this court, holding that it had been error to admit evidence of declarations by the depositor, after the deposit, that he had opened the account in this way, because he already had as much money in his own name as the rules of the bank permitted. 195 N. Y. 433, 88 N. E. 750.

In Matter of Davis, 119 App. Div. 35, 103 N. Y. Supp. 946, the beneficiary died before the depositor. After the death of the beneficiary the passbooks were found in his safe deposit vault. Held, that the possession of the books by the beneficiary indicated that they had been given to him by the depositor, and that the trust had thereby become irrevocable.

In Matter of U. S. Trust Company, 117 App. Div. 178, 102 N. Y. Supp. 271, affirmed on opinion below 189 N. Y. 500, 81 N. E. 1177, a father had made a deposit in his own name in trust for his son. He had retained the bank book, and had never, so far as appeared, notified the son of the deposit. The son died before the father. The latter made no change in the account, which remained in the form stated until his death. It was held that the trust had never been consummated, but remained tentative until the son's death, when it lapsed ipso facto. The Totten Case was quoted and relied upon.

In Matter of Pierce, 132 App. Div. 465, 116 N. Y. Supp. 816, the question arose under the Transfer Tax Act. The decedent had made deposits aggregating upwards of $20,000 in various savings banks in Massachusetts, "in trust for" his wife and children. He had kept possession of the bank books, but had repeatedly declared to the beneficiaries that the moneys were theirs, and, in the case of the children, that they would be entitled to receive the funds when they became 21 years of age. Held, that the trust became absolute and irrevocable before the death of the testator, and not liable for tax.

Matthews v. Brooklyn Savings Bank (recently decided) 151 App. Div. 527, 136 N. Y. Supp. 110, goes further than any of the foregoing cases. The bank book had been given to the beneficiary for safekeeping, and before the depositor's death was returned to her, whereupon she drew out the money. It was held that the notice to the bene-

ficiary, implied in giving her custody of the bank book, created an irrevocable trust.

From the foregoing cases, I think it must be held that a consummate and irrevocable trust was created in favor of plaintiff, and that the only question really involved is the effect of what happened in May, 1911, just before the depositor died. The only evidence as to the intention of the depositor at the time the deposit was made is that she at once gave the bank book to plaintiff. That evidence, standing alone and unqualified, fixed the character of the trust as an irrevocable one under the rule in the Totten Case. Having thus fixed its character as irrevocable, the depositor could not thereafter revoke it without the consent of the beneficiary, and subsequent declarations by the depositor as to the intention with which she had made the deposit were inadmissible (Tierney v. Fitzpatrick, supra), and, if admitted, were without probative value.

The act of plaintiff in returning the bank books, at the depositor's request, cannot be taken as a consent that the trust be revoked. The letter requesting that they be returned did not suggest an intention of revoking the trust or changing the form of the deposit, and there was no reason why plaintiff should have supposed that the depositor entertained any such intention, nor is there the slightest evidence that she did so intend. At all events, whatever may have been her secret intentions, she never attempted to effect a revocation, either by notice to the beneficiary, or by withdrawing the money, or by changing the form of the deposit.

[2] If we are right that an irrevocable trust was created when the deposit was made, the attempt to dispose of the moneys included in the trust by will was obviously ineffective. Kelly v. Beers, 194 N. Y. 60, 86 N. E. 985. Indeed, it would probably have been equally ineffective if the trust had remained tentative only, and no attempt had been made to revoke it before the death of the depositor; for in that case the trust would have become irrevocable at the same moment that the will took effect.

There is no dispute as to the facts, and every fact essential to a final disposition of the controversy has been found by the trial court. There is therefore no occasion for disturbing the findings of fact, or ordering a new trial.

The judgments appealed from must be reversed, and a judgment directed in each case in favor of the plaintiff, with costs in all courts against the defendants Isabella Grogan and Sara A. Trainor, as executrices, etc. All concur.