Anna E. Tibbitts, Individually and as Executrix, etc., of William Zink, Deceased, Respondent, *v.* John Zink, Appellant, Impleaded with Louise Zink and Others, Defendants.

Third Department, January 14, 1931.

*John N. Schilling* [*P. C. Dugan* of counsel], for the appellant.

*John J. McManus,* for the respondent.

Davis, J. The controversy here presented has its origin in a deposit of money in a savings bank in trust for the plaintiff. It is alleged that the defendant John Zink has wrongfully obtained possession of this fund and converted the same.

On May 1, 1916, a deposit of $4,500 was made in the City Savings Bank of Albany, the account being opened in the names of

"Mrs. Catherin Zink or William Zink, her husband, payable to either or the survivor of them." These parties were husband and wife and their only children were the plaintiff and defendant John Zink. In 1927 the father was in ill health and the plaintiff, his married daughter, went to his home to care for him. The daughter and her husband had built a new home, and in August of that year the parents went to live with them. The father was then seventy years of age and the mother about sixty.

On August 26, 1927, the account still remained at $4,500. On that day William Zink caused the deposit to be changed to a new account in the names of "Mrs. Catherin Zink or William Zink, in trust for Anna E. Tibbitts." On September second William Zink deposited $500 in the account, making a total of $5,000. On that day, so it is found, William Zink came back to his daughter's house and in the presence of his wife delivered the pass book to plaintiff and stated to his wife that he had just come from the bank, that he had had Anna's name put in the book and that he wanted it for her. Mrs. Zink then replied: "You couldn't do anything better; she deserves it for the work she has performed for us." On the eighteenth day of June preceding the father had made his will which provided: "*First*, I give, devise and bequeath all my real and personal property to my daughter, Anna E. Tibbitts in payment of what I consider my just debt to her for her care and maintenance of me."

Subsequent events have little significance except to throw light upon the intent of the donors. The daughter put away the bank book with her own effects. On the following October first the mother obtained possession of the book, whether by consent or otherwise does not appear, and either drew out the interest or had it entered in the book. Similar transactions occurred on subsequent interest dates. On such visits to the bank she was usually accompanied by a neighbor, Mrs. Margaret Smith, to whom she stated many times that the deposit was "Anna's money." The pass book was never returned to the possession of the plaintiff, although it remained in her home in her mother's custody until the latter left. On January 16, 1928, the father died; and thereafter the account was changed to stand in the name of "Mrs. Catherin Zink in trust for Anna E. Tibbitts." In July following the husband's death the mother left plaintiff's home and went to live for a short time with her son, the appellant. Until July 19, 1928, there had been no further change in the account and no part of the principal sum had been withdrawn. On this latter date Mrs. Zink closed the account and had it transferred to an account in the name of "Catherin Zink or John Zink, payable to

either or the survivor of them." Upon the death of the mother on February 10, 1929, the entire amount with some accumulated interest came into the hands of John. The change in the account was made without the knowledge or consent of the plaintiff.

It appears that the parents had owned real property which had been sold prior to their taking up their abode with their daughter. There were deposits in other savings banks in the name of one or both. Wills previously made by the mother indicated a purpose of making division of her property with some sort of equality between her children. Soon after she went to her son's home she caused a transfer to be made of the other two accounts to her son, so that the mother died propertyless. If this trust is defeated the son will have acquired all the property of both parents, leaving the daughter nothing. This seems contrary to the intent of both as expressed in their respective wills.

From the facts above stated the learned trial justice has found that there arose an irrevocable trust, and rendered judgment for plaintiff.

A trust of this nature is somewhat anomalous, for there is no right to the income in the beneficiary and the possession of the principal is postponed until the death of the donor. A trust that is revocable at will is scarcely in harmony with the ordinary concept of a trust. There is little in the writing to indicate intent. Naturally the reaction of the courts in this and other jurisdictions on the nature of such trusts has varied. Originally in this State when such a deposit was made by one person in trust for another it was regarded as irrevocable in the absence of evidence showing a contrary intent. (*Martin* v. *Funk*, 75 N. Y. 134; *Willis* v. *Smyth*, 91 id. 297.) The doctrine became untenable in the light of experience. (*Beaver* v. *Beaver*, 117 N. Y. 421, 430, 431), and there grew up in its stead the doctrine of a " tentative trust " which recognized the right of the depositor to retain title and to withdraw both principal and income during his lifetime, with the beneficiary entitled only to the balance remaining on deposit after the donor's death. (*Cunningham* v. *Davenport*, 147 N. Y. 43; *Matter of Barefield*, 177 id. 387.) Such a trust was held to be merely a suggested or proposed trust, not completed or consummated, with no title to the funds, actual or beneficial, vested in the proposed beneficiary; and it was revocable at will until the depositor died or had completed the gift in his lifetime by some unequivocal act or declaration. (*Matter of United States Trust Co.*, 117 App. Div. 178; affd. on opinion below, 189 N. Y. 500.)

There remained much uncertainty in the state of the law concerning the relation of the parties where a deposit was made in

trust until in 1904 the Court of Appeals clarified the situation by holding that a deposit by one person of his own money in his own name as trustee for another, did not, standing alone, establish an irrevocable trust during the lifetime of the depositor, but it was a tentative trust merely, revocable at will until the depositor died or completed his gift in his lifetime. The depositor might by some unequivocal act or declaration such as delivery of the pass book or notice to the beneficiary complete the gift and make the trust irrevocable. If the depositor died before the beneficiary without revocation or disaffirmance, the presumption was that the tentative trust became absolute in the balance of the fund. (*Matter of Totten*, 179 N. Y. 112, 125.) (See, also, *Stockert* v. *Dry Dock Savings Inst.*, 155 App. Div. 123; *Davlin* v. *Title Guarantee & Trust Co.*, 229 id. 269; affd., 255 N. Y. ——.)

There is no dispute here that a trust of some kind was created, first with two trustees and later with one; and that it implied possible future payment of a sum to plaintiff on the death of the parent last surviving. The crucial question is whether the acts above detailed created an irrevocable trust. It is purely a question of intent to be determined as a question of fact in the light of established legal principles. We have delivery of the bank book accompanied by statements indicating that the whole intent and purpose of the donors was to create an irrevocable trust. At least the trial court could properly draw that inference from the evidence. The direct proof is supported by evidence of the relation of the parties and by the surrounding circumstances indicating a recognition of service rendered and an obligation therefor to the beneficiary. (*Mabie* v. *Bailey*, 95 N. Y. 206.) The parties to the trust were all living together and it was not to be expected that their subsequent acts would be guarded by strict watch over legal rights. No doubt it was understood that the parents might take the book and withdraw interest if necessary, without affecting the integrity of the trust. The fact that the book passed out of the possession of the beneficiary or that the interest was thereafter drawn by one of the donors does not impugn the irrevocability of the trust. (*Farleigh* v. *Cadman*, 159 N. Y. 169; *Grafing* v. *Heilmann*, 1 App. Div. 260; affd., 153 N. Y. 673; *Stockert* v. *Dry Dock Savings Inst.*, *supra*.) We recognize that if the delivery of the bank book had been for some other purpose, like safekeeping, the trust would have remained tentative and revocable. (*Matthews* v. *Brooklyn Savings Bank*, 208 N. Y. 508.) Likewise, declarations unaccompanied by delivery of the pass book might not be sufficient. (*Hessen* v. *McKinley*, 155 App. Div. 496; affd., 209 N. Y. 532.) But here we think the evidence was sufficiently clear so that the

purpose and intent to make an irrevocable trust could be determined as a question of fact. (*Matthews* v. *Brooklyn Savings Bank, supra,* 511.)

There are slight inconsistencies in the findings. As we view it, Catherin Zink and William Zink became trustees of a fund for Anna Tibbitts on September 2, 1927, when the bank book was delivered to her. They had divested themselves of all but legal title and were no longer joint owners of the fund. Therefore, we modify the defendant's requests to find as found by the court by striking from numbers " third " and " fifth " the words " as joint owners; " and we insert the words " in form " before the word " transferred " in number " sixth " and the same words before the word " standing " in number " seventh."

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.

The defendant's requests to find, as found by the court, numbered third and fifth, are modified by striking out the words " as joint owners; " and by inserting the words " in form " before the word " transferred " in number 6, and the same words before the word " standing " in number 7.