LENA HANIGAN, Respondent, *v.* ABRAM L. WRIGHT, as Executor, etc., of ALMA BABCOCK, Deceased (Substituted in Place of ALBANY SAVINGS BANK), Appellant.*

Third Department, June 30, 1931.

---

*Alberti Baker*, for the appellant.

*Schaffer & Sevits* [*Harry M. Schaffer* of counsel], for the respondent.

HILL, J.   The plaintiff has judgment determining that she is entitled to $2,833.80 now on deposit in an Albany bank.   This is the balance of a deposit made by defendant's testatrix in the name of "Alma Babcock in trust for Lena Hanigan."   The court determined that defendant's testatrix, by the deposit, created an irrevocable trust in favor of the plaintiff.   Testatrix received the money deposited in this trust fund as survivor of her husband, it having been, at the time of his death, in the same bank in their joint names, with the right of survivorship.   Apparently the plaintiff was the granddaughter of the deceased husband.   Plaintiff and the testatrix consulted an employee of the bank as to the form of deposit necessary to accomplish the desires of testatrix.   He gives the following account of the talk: " Why, two women appeared before my window on March 26, 1930.   One said that she was Alma Babcock and the other Lena Hanigan.   Alma Babcock told me that she desired to open an account with Lena Hanigan, wanting the money to go to Lena Hanigan.   I explained the various forms of account to them, and Mrs. Babcock rather favored the joint account, giving them equal rights, whereupon this Lena Hanigan said, ' No, Grandma '— [an objection sustained].   And Lena Hanigan persuaded Alma Babcock to open a trust account and I explained that only upon the death of Alma Babcock would the money go to Lena, and that was the way Lena wanted it — she wanted this Alma Babcock to have control of it, although Alma Babcock wanted this girl to have the money then and there."

After the discussion, $3,353.80 was deposited and at once testatrix withdrew $420 which she gave to the plaintiff.   Later, while the parties were returning to their homes, the testatrix gave the pass book to the plaintiff.   The trust in favor of plaintiff was subject to the limitation that testatrix was to use so much of the fund as she desired.   The husband of the plaintiff testified that the testatrix said, when she delivered the pass book to his wife, " You keep it and if I need any you can draw the checks for me."   The pass book remained in the possession of plaintiff until late in the

month of May, when she delivered it to the testatrix, who was then ill and living some miles distant. Within a few days the testatrix drew $100 from the account and later, just prior to her death, drew an order for the balance remaining on deposit, which she forwarded with the pass book to the bank. This balance in the form of a cashier's check was sent to the testatrix, but upon its arrival her illness had progressed so that she was unable to indorse it. The fund represented thereby is the subject-matter of this action.

*Matter of Totten* (179 N. Y. 112) states the distinction between revocable and irrevocable trusts. "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary " (pp. 125, 126).

An irrevocable trust was here created. The corpus was not necessarily the full amount of the deposit. The testatrix could use so much as she thought necessary for her support and maintenance. She owned no other personal property. The plaintiff was to draw checks for her. When she became ill some distance from plaintiff's home, it is a fair inference that the pass book was returned to enable her to withdraw such amounts as she wished for her support and care in her illness, it being inconvenient for the beneficiary to prepare the checks as had been first planned. No issue is raised that the testatrix incurred expenses during her life which were properly payable from this fund. Mrs. Babcock had divested herself of title to so much of this fund as remained after such withdrawals as she might make for her support and maintenance. Nothing she might do could change the fixed nature of the transfer. (*Tibbitts* v. *Zink*, 231 App. Div. 339; *Davlin* v. *Title Guarantee & Trust Co.*, 229 id. 269; affd., 255 N. Y. 559; *Farleigh* v. *Cadman*, 159 id. 169.)

The judgment and order should be affirmed; with costs.

All concur, except VAN KIRK, P. J., who dissents with an opinion, in which RHODES, J., concurs.

VAN KIRK, P. J. (dissenting). When Alma Babcock, the donor, made the deposit she directed that the bank account be in form Alma Babcock in trust for Lena Hanigan. Shortly thereafter she delivered the bank book to Lena Hanigan, the plaintiff. With this evidence, each party having asked the court to direct a favorable verdict, the court was justified in finding that the gift was complete and an irrevocable trust established. But the question

remains of what was the gift completed and of what was the trust irrevocable. The gift and trust were so conditioned and limited that Alma Babcock could use so much of the fund as she desired; that is, she gave that much only as might remain at the time of her death. There was no limit of the use to her needs. The limit was only to her desires. She did from time to time draw out part of the funds.

For some reason undisclosed plaintiff had restored the bank book to Alma Babcock. She finally drew an order for the balance of the account payable to herself. She sent this order and the bank book to the bank, which thereupon sent her its cashier's check payable to her and closed the account on its books. This check was delivered to her but she never indorsed it. The delivery of her order and the bank book to the bank, followed by the delivery of the cashier's check for the balance of the fund, left nothing remaining of that which was given, subject to the limitation imposed on the gift. The account was closed and the trust likewise closed. The cashier's check on delivery to her became her property; it was not necessary for her to indorse it in order to make it her property. The proceeds no longer remained in the trust fund. Because she did not indorse and present the check for payment the money or credit remained in the custody of the bank but not in the trust fund.

Considering the limitation on the gift I do not think the trial court could have found that this latter transaction was an attempted revocation of an irrevocable trust. It seems to me simply the exercise of her reserved right to use so much of the fund as she desired. The right to use the fund was reserved to her absolutely during her life. She could use it for any object her desires might prompt.

Nor can it be said with what intent the bank book was returned by plaintiff to the donor. It is quite reasonable to infer that plaintiff made a redelivery with intention to restore the fund in answer to Mrs. Babcock's desire. This consideration, however, is not necessary to the conclusion reached.

If it be suggested that this results substantially in the revocation of an irrevocable trust, the answer is that such was the contract between the parties; the donor could impose conditions upon her gift as she desired.

The judgment should be reversed on the law, with costs, and judgment rendered for the amount of the cashier's check, with interest thereon in favor of defendant.

RHODES, J., concurs.

Judgment and order affirmed, with costs.