■ In the Matter of JACK DORREN, as Administrator of the Estate of HARRY DORREN, Deceased, Petitioner, v STATE OF NEW YORK DEPARTMENT OF SOCIAL SERVICES et al., Respondents.—Determination unanimously annulled, without costs, and petition granted. Memorandum: In December, 1971 Harry Dorren opened separate trust bank accounts for each of his three granddaughters and deposited $4,000 in each account. They were three-year term, 6% accounts, in each of which he named himself as trustee. Later in that same month he delivered the passbooks to the beneficiaries and at that time he expressed the wish that the funds be used for educational purposes. Thereafter his grandchildren transferred the passbooks to their father, Jack Dorren, for safekeeping. Although the bank issued interest checks to Harry Dorren as trustee, the interest was always turned over to the grandchildren. In February, 1974 Harry Dorren, then 69 years of age, suffered a stroke following which he applied for and received medical assistance under the Social Services Law. The following month he was confined to the Jewish Home and Infirmary. In December, 1974 Jack Dorren, who had assumed management of his father's affairs, received notification from the bank concerning the expiration of the term of the trust deposits and he completed a form directing the bank to continue the accounts under the same titles but as ordinary day-to-day savings accounts. Although the local agency had been advised of the existence of the accounts, it was not until May, 1975 that it issued notification of its intent to discontinue medical assistance authorization on the ground that the funds in the accounts constituted

excess resources. Following a fair hearing, the Commissioner of the State Department of Social Services affirmed the local agency action. The commissioner's decision relied upon the December, 1974 renewal of the accounts as evidencing Harry Dorren's control over the funds and concluded that the trust accounts constituted an available resource. While the law with respect to Totten Trusts has since been changed (see EPTL, art 7, part 5), at the time of the events under consideration it was clear that such a trust was revocable at will until the depositor completed the gift "by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary" (Matter of Totten, 179 NY 112, 126). Here the expressed intention of the depositor to make a gift, accompanied by the unconditional delivery of the passbooks to his grandchildren, constitutes an irrevocable trust (see 61 NY Jur, Trusts, § 111). That the beneficiaries transferred the passbooks to their father who, upon termination of the three-year term, directed that the deposits be continued under the same titles, does not impugn the irrevocability of the trust (see Tibbits v Zink, 231 App Div 339). Inasmuch as the transfer was complete more than one year prior to the application for medical assistance, there is no presumption that it was made for the purpose of qualifying for such assistance (see Social Services Law, § 366, subd 1, par [e]). Additionally, the application was preceded by a sudden disability which occurred over two years after the transfer. In such circumstances, without more, it may not be concluded that the transfer was made for the purpose of qualifying the applicant for medical assistance. (Art 78 proceeding transferred by order of Monroe Supreme Court.) Present—Moule, J. P., Cardamone, Simons, Dillon and Denman, JJ.